**Sharolyn CHARLES, on behalf of herself and all others similarly situated, Plaintiff–counter–defendant–Appellant,**

v.

**LUNDGREN & ASSOCIATES, P.C.; Alvin R. Lundgren; Defendants–Appellees,**

**Check Rite Ltd., Defendant–counter–claimant–Appellee.**

**No. 96–15995.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1997.

Decided July 8, 1997.

Michael C. Shaw, Bybee & Shaw, Tempe, AZ, and Daniel A. Edelman, Edelman & Combs, Chicago, IL, for plaintiff-appellant.

Mark O. Morris, Snell & Wilmer, Salt Lake City, UT, and Alvin R. Lundgren, Lundgren & Associates, Rancho Cordova, CA, for defendants-appellees.

Michael B. Bennett, Bennett Law Offices, Salt Lake City, UT, for amicus curiae Shop-Ko Stores, Inc. and Mrs. Fields Original Cookies, Inc.

Ernest J. Isenstadt, Assistant General Counsel, Federal Trade Commission, Washington, DC, for amicus curiae Federal Trade Commission.

Joanne S. Faulkner, New Haven, CT, for amicus curiae National Association of Consumer Advocates, Inc. and Consumer Law Center of the South.

Before: GOODWIN, D.W. NELSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

### Overview

This case presents an issue of first impression in this circuit: whether a third-party debt collector's efforts to collect a dishonored check are governed by the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692–1692o. The district court ruled that the FDCPA does not apply to efforts to collect a dishonored check, because a dishonored check is not a "debt" under the FDCPA.

The only federal court of appeals that has considered this question is the Seventh Circuit. In a well-reasoned and persuasive opinion, that court recently held that a dishonored check is a "debt" under the FDCPA. *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir.1997). We agree with its conclusion that, because "an offer or extension of credit is not required for a payment obligation to constitute a 'debt' under the FDCPA," *id.* at 1326, the FDCPA governs the collection of dishonored checks. We therefore reverse.

## Background

Sharolyn Charles ("Plaintiff") brought suit against Check Rite Ltd., Alvin R. Lundgren, and Lundgren & Associates (collectively, "Defendants"), alleging that Defendants' actions in attempting to collect a dishonored check violated the FDCPA. Charles wrote a check in the amount of $17.93 to a Poncho's Restaurant as payment for a meal on July 4, 1996. The check was dishonored for insufficient funds. Poncho's forwarded the returned check to Check Rite for collection. On July 19, Check Rite sent a letter to Charles, stating that "[t]his is an attempt to collect a debt" and requesting total payment of $42.93–the amount of the check plus a service charge of $25.00. On August 7, Check Rite sent a second letter, requesting payment of $42.93 and advising Charles that failure to pay the total amount due might result in additional liability for damages and attorneys' fees, estimated at $242.93.

Check Rite subsequently referred the matter to the law firm of Lundgren & Associates for collection. On September 8, Lundgren sent a letter to Charles offering to settle within ten days for a total amount of $127.93–the amount of the check plus a settlement amount of $110.00. Lundgren further advised that they had made no decision to file suit, that they could later decide to do so, and that Charles's potential liability was $317.93. Charles immediately sent to Lundgren a money order in the amount of $17.93. On September 13, Lundgren sent a second letter, repeating the settlement offer made in the September 8 letter. Lundgren then returned Charles' payment, on September 14, declining to accept it as payment in full and repeating the settlement offer. On September 19, Lundgren sent a fourth letter to Charles, repeating the settlement offer.

■ On October 15, Charles filed a suit against Defendants, seeking certification of her suit as a class action and alleging violations of the FDCPA, 15 U.S.C. §§ 1692e, 1692f, 1692g. The alleged violations included making false representations, seeking to collect more money than required by state law

to discharge the debt, and threatening litigation without intending to pursue it. Defendants moved to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that an attempt to collect a dishonored check is not an attempt to collect a "debt" governed by the FDCPA. The district court granted the Defendants' motion, holding that the FDCPA did not apply to Defendants' actions. The district court concluded that the FDCPA applies only to debts arising out of an offer or extension of credit and that dishonored checks therefore are not "debts" within the statute's meaning. Plaintiff appeals.[1] We review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996).

## Discussion

■ In a factually similar situation, our colleagues on the Seventh Circuit recently confronted the same question of whether a dishonored check is an FDCPA "debt." *See Bass,* 111 F.3d 1322. Unfortunately, the district court did not have the benefit of *Bass* before it ruled.

In *Bass,* the Seventh Circuit ably analyzed the scope of the FDCPA and responded to the same arguments presented by the Defendants here. To determine whether a dishonored check constitutes an FDCPA debt, the Seventh Circuit began with the text of the FDCPA itself. The FDCPA defines "debt" as:

> *any obligation* or alleged obligation *of a consumer to pay money arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added). Noting that "we see no language in the Act's definition of 'debt' (or any other section of

---

1. We grant the Defendants' Motion to Strike the Plaintiff's Appendix. We also grant the Motion for Leave to File an Amicus Brief submitted by the National Association of Consumer Advocates, Inc. and the Consumer Law Center of the South.

the Act) that mentions, let alone requires, that the debt arise from an extension of credit," *Bass,* 111 F.3d at 1325, the Seventh Circuit concluded: "We harbor no doubt that a check evidences the drawer's obligation to pay for the purchases made with the check, and should the check be dishonored, the payment obligation remains." *Id.* The court also rejected the appellants' invitation to read the undefined term "transaction" restrictively as a "credit transaction." *Id.* at 1325–26.

Although resort to extrinsic sources was unnecessary in view of the clear language of the Act, the Seventh Circuit reviewed the legislative history, concluding that it "serves to reinforce a finding that non-credit transactions are included in the Act's purview." *Id.* at 1327. Noting that earlier versions of the Act included a credit extension requirement and that the applicability of the Act to dishonored checks was acknowledged during the House and Senate hearings, the Seventh Circuit aptly concluded: "In short, Congress was aware of discord on whether 'debt' should be defined restrictively to include only credit transactions, but rejected this restriction in the text it adopted." *Id.* Finally, the court pointed to "an unequivocal statement of the drafters' intent on this issue: '[T]he committee intends that the term "debt" include consumer obligations paid by check or other non-credit consumer obligations.'" *Id.* (quoting H.R.Rep. No. 95–131, 95th Cong., 1st Sess. 4 (1977)).

The Seventh Circuit also rejected the appellants' reliance on the Act's codification as an amendment to the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 et seq. Noting that the Act's placement in the CCPA is "at best a weak tool in the search for Congressional intent," the court found the connection "unpersuasive in light of the continuing expansion of the CCPA's protective landscape." *Id.* at 1328. Finally, the *Bass* court rejected the suggestion that "any dishonored check should fall outside the act pursuant to a judicially created fraud exception." *Id.* at 1329.

■ We find the Seventh Circuit's reasoning to be sound and thus hold that a dishonored check is a "debt" within the meaning of the FDCPA. Our decision in *Bloom v. I.C. System, Inc.,* 972 F.2d 1067 (9th Cir.1992), does not require a different result. Although

in *Bloom* we turned to the Truth in Lending Act's ("TILA") definition of "consumer loan" to shed light on the meaning of that phrase as used in the FDCPA, *id.* at 1068–69, we did not suggest that TILA definitions should be used to restrict broader FDCPA definitions. Nor did we suggest that a term must be interpreted consistently throughout the CCPA when separate subchapters use the term differently. Like the Seventh Circuit, we find the suggestion "that we graft a credit requirement, either from the location of the FDCPA in the United States Code or from the independent codified purpose of the Truth in Lending Act, untenable." *Bass,* 111 F.3d at 1329.

■ Because we have the benefit of the Seventh Circuit's cogent analysis, we will not replow plowed ground. Instead, we adopt the reasoning of the Seventh Circuit and conclude, as it did, that the FDCPA's application is not limited to collection of debts arising out of the offer or extension of credit. A dishonored check constitutes an FDCPA "debt," and therefore the FDCPA prohibits check collectors from using abusive practices. We reverse the district court's dismissal of Plaintiff's complaint for failure to state a claim and remand for further proceedings.

REVERSED AND REMANDED.